UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MEL THOMPSON,<br> *Plaintiff*,<br><br> v.<br><br>OCWEN FINANCIAL CORPORATION, *et al.*,<br> *Defendants*. | No. 3:16-cv-01606 (JAM) |

## RULING GRANTING MOTIONS TO DISMISS

Plaintiff Mel Thompson believes his 2003 mortgage was fraudulent, and he has spent many years seeking relief in federal court. In this latest round of litigation, he asserts a variety of fraud-related claims against many defendants whom he has sued before, as well as against a law firm and one of its lawyers. Because plaintiff lacks standing for most of his claims and because his remaining claims fail as a matter of law, I will grant defendants' motions to dismiss.

### BACKGROUND

Plaintiff has filed an amended complaint (Doc. #44) that names the following defendants: Ocwen Financial Corporation and two of its officers (William Erbey and Ronald Faris); New Century Mortgage and one of its agents (Karen Smith); Deutsche Bank National Trust Company; Morgan Stanley Abs Capital I Inc.; the law firm of Bendett & McHugh as well as one of its attorneys (Alex Ricciardone); and Accent Capital and its owner (Terrence Riordan).[1] This case is the most recent of many federal lawsuits that plaintiff has filed stemming from what he claims was an allegedly fraudulent mortgage loan transaction for his home in 2003 and from the later

---

[1] Four of the named defendants have yet to appear in this action despite docket entries reflecting that they have been served: Accent Capital, New Century Mortgage, Terrence Riordan, and Karen Smith. The amended complaint also named two more defendants—Leopold & Associates PLLC and Michael T. Rozea—as to whom plaintiff later filed a stipulation of dismissal. Doc. #82.

1

unlawful efforts of defendants to collect or enforce the debt against plaintiff.[2] The first four counts of the amended complaint allege violations of different provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The remaining non-dismissed counts of the complaint allege violations of state law: the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*. (Count 5); fraud (Count 6); negligence (Count 7); and slander of title (Count 8).

Significantly for the disposition of this case, plaintiff filed a Chapter 7 bankruptcy petition on November 21, 2011. *See In re Melvin Thompson*, No. 3:11-bk-32924-LMW. Plaintiff listed on his bankruptcy schedules the various suits in which he was a party at the time he filed his petition, *see* Doc. #24 to *id*., which included two of his prior federal cases concerning this mortgage that were before Judge Thompson. *See Thompson v. Barclays Capital Real Estate, Inc., d/b/a Barclays Homeq Servicing*, No. 3:10-cv-317 (D. Conn. 2010); *Thompson v. Accent Capital*, No. 3:11-cv-69 (AWT), 2011 WL 3651848 (D. Conn. 2011), *aff'd,* 491 F. App'x 264 (2d Cir. 2012).

On March 19, 2012, the trustee of plaintiff's bankruptcy estate, Barbara Katz, issued a report of no distribution. That same day she also filed a report of abandonment, in which she abandoned "all litigation in which the Debtor is a Plaintiff or Counter Plaintiff pending in the Connecticut Superior Court and in Federal Court, both District Court and the Court of Appeals." Doc. #60 to *In re Melvin Thompson*, No. 3:11-bk-32924-LMW.

---

[2] *See Thompson v. Wachovia Corp.*, No. 3:06-cv-595 (SRU); *Thompson v. Barclays Capital Real Estate, Inc., d/b/a Barclays Homeq Servicing*, No. 3:10-cv-317 (AWT); *Thompson v. Accent Capital*, No. 3:11-cv-69 (AWT), 2011 WL 3651848 (D. Conn. 2011), *aff'd,* 491 F. App'x 264 (2d Cir. 2012); *Thompson v. Ocwen Financial Corp.*, No. 3:13-cv-386 (JCH), 2013 WL 4522504 (D. Conn. 2013). Plaintiff also filed an action against all of the current defendants other than the Bendett defendants on February 12, 2016, but filed a voluntary dismissal of the entire case on August 17, 2016, after a dispute over service of process. *See Thompson v. Ocwen Financial Corporation et al.*, No. 3:16-cv-231 (AWT).

Plaintiff eventually received his final discharge from bankruptcy on April 24, 2014, and the bankruptcy case was closed on October 8, 2015. At the time of plaintiff's discharge, he received a discharge injunction pursuant to 11 U.S.C. § 524(a)(2), which prohibits a creditor from attempting to collect on a personal liability which has been discharged in bankruptcy. All properly scheduled property of the bankruptcy estate that had not been discharged reverted to plaintiff's possession.

## DISCUSSION

Defendants have moved to dismiss the complaint on a variety of grounds under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. It is well established that federal courts should ordinarily resolve any doubts about the existence of federal subject matter jurisdiction prior to considering the merits of a complaint. *See, e.g.*, *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

For purposes of a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155–56 (D. Conn. 2016). The Supreme Court has elaborated as follows on the "plausibility" standard for evaluating a motion to dismiss:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are merely consistent

3

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678. Naturally enough, because the focus of "plausibility" review is on what *facts* a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" nor "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

### ***Standing as to Claims of Bankruptcy Estate***

Defendants move to dismiss on grounds that plaintiff lacks standing to pursue claims that were the property of the bankruptcy estate. I agree for substantially the same reasons stated by Judge Hall in previously dismissing one of plaintiff's prior lawsuits against many of the same defendants now named in this action. *See Thompson v. Ocwen Financial Corp. et al.*, 2013 WL 4522504, at *3–5 (D. Conn. 2013). As explained in Judge Hall's opinion, all causes of action possessed by a debtor when the debtor's bankruptcy petition is filed no longer belong to the debtor but to the bankruptcy estate. So too do causes of action that arise after filing but before the bankruptcy case is closed, at least if they are "sufficiently rooted in the pre-bankruptcy past." *See id*. at *3 (explaining the different approaches different courts have taken as to this issue). Once a claim becomes part of the bankruptcy estate, it is only the trustee who has standing to pursue that claim until it has been validly abandoned. And while "properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed." *Id*. at *4 (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).

Here, plaintiff did not disclose in his bankruptcy papers any causes of action pertaining to the allegedly invalid mortgage at issue here other than the two cases before Judge Thompson.

*See* Doc. #24 to No. 11-bk-32924. As a result, the trustee's abandonment of "all litigation in which the Debtor is a Plaintiff or Counter Plaintiff pending in the Connecticut Superior Court and in Federal Court, both District Court and the Court of Appeals," Doc. #60 to No. 11-bk-32924, encompassed only these two cases before Judge Thompson, not any causes of action plaintiff had yet to pursue in any court and that were not listed in his bankruptcy schedules. *Compare Taylor v. Fin. Recov. Servs.*, 252 F. Supp. 3d 344, 350 (S.D.N.Y. 2017) (FDCPA claim that was actually disclosed in bankruptcy petition reverted to debtor upon closing of bankruptcy estate).

Plaintiff alleges that there was an assignment of his debt from New Century to Ocwen that occurred on July 31, 2015, and that this assignment was illegal because no valid debt existed to be assigned. Doc. #44 at 21, 24 (¶¶ 68, 77). Because the allegation of illegality is rooted in the alleged fraud in 2003 of the pre-bankruptcy past, plaintiff lacks standing to pursue his claim that the assignment of the debt in 2015 was unlawful. *Compare In re Rhinesmith*, 450 B.R. 630 (W.D. Tex. 2011) (FDCPA claims of Chapter 7 petitioner that were grounded entirely in post-petition conduct and that had no roots in pre-petition conduct were not property of the bankruptcy estate).

Plaintiff otherwise lacks standing to pursue any of his non-disclosed federal or state law claims that are predicated on fraud or other illegality that occurred during his pre-bankruptcy past. With the exception of two post-bankruptcy claims discussed below as against Ocwen and against the Bendett law firm defendants, I conclude that plaintiff has no standing to pursue any of his other claims against any of the defendants in this case.[3]

---

[3] Insofar as any of plaintiff's claims were or could have been presented in the two cases before Judge Thompson, they are either time-barred for the reasons stated by defendants Deutsche Bank and Ocwen in their motion to dismiss, Doc. #49-1 at 32, or they are barred by *res judicata*. *See Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008).

### *Claim against Ocwen re "Statement" of August 16, 2016*

One of plaintiff's claims arguably relates to post-petition conduct and involves a claim of illegality under the FDCPA that does not necessarily depend on the illegality of acts that occurred prior to plaintiff's bankruptcy. Although I conclude that plaintiff has standing to maintain this claim, plaintiff has not alleged plausible grounds for relief.

Plaintiff alleges that defendant Ocwen violated the FDCPA when it sent a certain "statement" to him on August 16, 2016. Doc. #44 at 50 (¶ 212). In order to show that sending this "statement" was a violation of the FDCPA, plaintiff must show that it constituted an attempt to collect the mortgage debt from plaintiff.[4] If it were such an attempt and if the debt had been discharged in the bankruptcy, then the statement also may have violated the discharge injunction of plaintiff's bankruptcy case. *See* 11 U.S.C. § 524(a)(2); *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 88–91, 92 n.7 (2d Cir. 2016) (discussing rights of action for violations of FDCPA that occur in violation of discharge injunction).

But a discharge injunction under 11 U.S.C. § 524 "only prevents enforcement of personal liability," and "it does not prevent foreclosure of a mortgage that remains in default after a discharge is issued and a chapter 7 case is closed." *In re Wilson*, 492 B.R. 691, 696 (Bankr. S.D.N.Y. 2013). Moreover, at least where the underlying personal debt has been discharged through bankruptcy, "an action seeking foreclosure under Connecticut law should be considered

---

[4] The most relevant sections of the FDCPA are 15 U.S.C. § 1692e(2)(A), which prohibits "the false representation of the character, amount, or legal status of any debt," and § 1692f(1), which prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Under the former, Ocwen would only be liable for misrepresenting the status of plaintiff's discharged debts, *i.e.*, suggesting that Ocwen was still entitled to recover personally on those debts despite the discharge. Under the latter, Ocwen would only be liable for "the collection of" the debt. Similarly, § 1692d prohibits "any conduct" by a debt collector "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." And § 1692g(b) prohibits debt collection attempts after a debtor has given written notice that it disputes the debt or some portion thereof. If the statement was not a debt collection attempt, none of these sections would apply.

6

the enforcement of a security interest as opposed to an action to collect a debt" under the FDCPA. *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 363 (D. Conn. 2012) (citing cases).

Judge Bryant's ruling in *Derisme* concludes that one who seeks to enforce or foreclose upon a mortgage is not a "debt collector" subject to the entire FDCPA, at least where no additional deficiency judgment is sought. To reach this conclusion, *Derisme* and like-minded rulings have relied on a provision of the FDCPA, 15 U.S.C. § 1692a(6), which expressly defines the term "debt collector" and makes clear that the term applies to an enforcer of security interests only for purposes of one type of "unfair practice" provision of the FDCPA, 16 U.S.C. § 1692f(6). These courts have reasoned that the purposeful inclusion of security interests for one section of the FDCPA implies that the term "debt collector" should not include an enforcer of security interests for purposes of any other sections of the FDCPA. *See* 880 F. Supp. 2d at 362–64.

More recently, Judge Underhill has raised doubt about whether this interpretation is correct. *See Cicalo v. McCalla Raymer Leibert Pierce*, 2017 WL 3444675, at *3–5 (D. Conn. 2017). He notes that the FDCPA otherwise excludes certain groups from the general definition of debt collectors, *see* 15 U.S.C. § 1692a(6)(A)–(F), but that enforcers of security interests are not among those who are expressly excluded from the definition of a debt collector. Accordingly, in Judge Underhill's view, the FDCPA should not be interpreted to create a categorical "identity-based exemption" for security-enforcers when no such exemption was expressly given in the text of the FDCPA, such that "enforcers of security interests are not *per se* excluded from the definition of debt collector under the FDCPA." *See Cicalo*, 2017 WL 3444675, at *4.

I do not need to choose between *Derisme* and *Cicalo* to decide this case and to decide if enforcers of security interests are *per se* exempt from the definition of a "debt collector" under the FDCPA. That is because neither decision involved application of the FDCPA in the bankruptcy context where a personal debt that underlies a secured mortgage interest had already been discharged. I need only conclude that the act of enforcing a security interest alone when the underlying debt has already been discharged through bankruptcy is not an act of "debt collection" that is subject to the FDCPA.

The parties have provided the Court with a "Mortgage Account Statement" sent by Ocwen to plaintiff on August 16, 2016, and it is clear that it was not an attempt to collect a debt within the scope of the FDCPA. The first page of the statement describes the amount of principal, interest, and total unpaid amount that is due, and it further states in boldface: "This statement is for informational purposes only." Doc. #80 at 3. On its reverse the statement includes the following language:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. *However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Doc. #80 at 4, 6 (emphasis added).

Essentially the same language has been litigated under the FDCPA in other cases involving defendant Ocwen, and other courts considering this language has held that, in circumstances like plaintiff's, this type of communication does not constitute an attempt to collect a debt in contravention of the discharge injunction and the FDCPA. *See, e.g.*, *Lovegrove v. Ocwen Home Loans Servicing, L.C.C.*, 666 F. App'x 308, 311–12 (4th Cir. 2016); *LaCourse v. Ocwen Loan Servicing, LLC*, 2015 WL 1565250, at *9–12 (D.N.H. 2015); *cf. Goodson v. Bank*

8

*of America, N.A.*, 600 F. App'x 422, 430-32 (6th Cir. 2015); *compare Hart v. FCI Lender Servs., Inc.,* 797 F.3d 219, 226 (2d Cir. 2015) (letter announcing intent to collect debt and lacking explicit "for informational purposes" bankruptcy disclaimer was an attempt to collect a debt within scope of FDCPA). I agree with these cases, and I therefore conclude that plaintiff does not have a cause of action against defendant Ocwen under the FDCPA for the statement of August 16, 2016.

*Claim against Bendett Defendants re Letter of August 23, 2016*

For the same reasons, I conclude that the Bendett law firm defendants may not be held liable to plaintiff on the basis of a letter they sent on August 23, 2016. This letter contains language almost identical to that in the statement sent by Ocwen. *See* Doc. #81 at 17 ("If you have previously received a discharge in bankruptcy which discharged this debt, this correspondence is not and should not be construed to be an attempt to collect a debt, but only information relative to enforcement of a lien against the above referenced property.").

Moreover, the letter also begins by stating that Bendett & McHugh had been retained "to commence a foreclosure on the above referenced property." *Id.* at 16. For reasons set forth at length by Judge Bryant, the FDCPA does not properly apply to statements by law firms in the context of foreclosure proceedings. *See Derisme*, 880 F. Supp. 2d at 365-67. Accordingly, I conclude that this letter was not a debt collection attempt, and therefore that plaintiff's FDCPA claims against the Bendett defendants must be dismissed.

CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Docs. #47, #49, #51, #53, and #58) are GRANTED. The motions to dismiss by defendants Michael T. Rozea and Leopold & Associates (Docs. #55, #57) are DENIED as moot in light of plaintiff's voluntary dismissal of

9

these defendants from this action (Doc. #82). Plaintiff's motion for hearing (Doc. #66) is DENIED as moot in light of the Court's hearing on the pending motions to dismiss (Doc. #79). Plaintiff's motion for default judgment (Doc. #85) against the remaining defendants who have not entered appearances in this action is DENIED for the same reasons set forth above that show that plaintiff has no standing or plausible claim remaining against any of the non-appearing defendants. The claims against the non-appearing defendants are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 23rd day of January 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge